IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 14-cv-03343-RPM

NICHOLAS J. RADER,

    Plaintiff,

v.

ENSIGN UNITED STATES DRILLING, INC., and
ADAM ROESELER,

    Defendants.

---

ORDERS ON SUMMARY JUDGMENT

---

Nicholas Rader, a former employee of Ensign United States Drilling, Inc. ("Ensign") believes that he was fired from his job as Driller on Rig No. 145 because his immediate supervisor, Rig Manager Adam Roeseler, and Drilling Manager, Ryan Hessler, mistakenly thought that he was suffering from leukemia or some form of cancer and would become a liability for the company.  Rader acted on that belief by filing a Charge of Discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC") in May, 2013, alleging violations of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101.  (Doc. 48-1).  After receiving a notice of right to sue letter issued by the EEOC, Radar filed a complaint in the District Court, Denver County, Colorado, on November 21, 2014, initiating this civil action which Ensign removed to this court on December 10, 2014.  (Doc. 1).

The complaint alleges violations of the ADA, giving this court federal question jurisdiction, and a claim for breach of contract against Ensign together with a claim for

tortious interference with employment relationship against Roeseler, individually. The defendant asks that these state law claims be adjudicated by the exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

After full discovery, the defendants moved for summary judgment of dismissal contending that Rader cannot produce admissible evidence sufficient to support a reasonable jury's findings of facts material to these claims.

Upon review of the extensive exhibits and briefing filed by the parties, the following is a summary of the facts that are not disputed.

Rader began working for Ensign in July, 2006, as a floorhand on a drilling rig near Rifle, Colorado. He worked on other Ensign rigs in Colorado, Wyoming, Canada and North Dakota during the next four years. He worked in various positions.

In early 2012, Rig Manager Robert Winters promoted Rader to the position of Driller on Rig No. 153 in Wyoming. In June, 2012, Winters proposed firing Rader for insubordination but Drilling Superintendent K. L. Tipps changed the Personnel Action Form and transferred Rader to a motorhand position on Rig No. 145 near Dacono, Colorado. That was a temporary demotion because the driller position was not then open. Rig Manager, Roeseler, promoted Rader to Driller in August, 2012.

The Driller controls the rig, supervises a crew and is responsible for the completion of the tasks assigned by the Rig Manager.

The relationship between Rader and Roeseler was not harmonious. There are many factual disputes about their interaction that cannot be resolved on summary

judgment. There are also many factual disputes about Rader's work performance and his management of his crew members.

Important to this case is the undisputed fact that on Christmas Day, 2012, during the second shift, three members of the crew trying to connect the kill-line while the drilling equipment was under pressure were injured when a valve blew off.

Rader and all crews worked 12 hour shifts on a seven days on and seven days off schedule. Rader's crew ended their seven days on Christmas Eve. Ensign contends that they should have attached the kill-line when they were stacking pipe during their shift. Rader testified that Roeseler told him that it was not necessary to do it at that time and that the Driller on the next shift knew that the attachment had not been made.

On the morning of December 31, 2012, Roeseler telephoned Rader at this home. Rader did not answer the phone but heard Roeseler leave a voice message saying that Rader's services were no longer needed. Rader testified that when he called back to Roeseler to ask why, Roeseler said, "Well, Mr. Rader, you just killed three men." Alarmed, Rader drove out to the rig and learned that no one was killed or seriously injured but Roeseler refused to talk about the termination.

Rader went to Hessler's office in Denver on January 3, 2013, to try to get his job back. Hessler said that Rader could not go back to Rig No. 145 or be a Driller. Hessler offered a job on a rig in Pennsylvania. Rader declined that offer as a substantial demotion and he did not want to move his family from Colorado or be that far away from them.

On January 11, 2013, Hessler filled out a Personnel Action Form terminating Rader's employment effective on that date for the stated reason, "Has been dealing with personal issues with health & home, wanted to quit."

Rader asked for a formal termination notice because he wanted the wages of a driller and failing that wanted to receive unemployment benefits.

The ADA claim requires a finding that Roeseler and Hessler mistakenly believed that Rader had an impairment that substantially limited him in one or more major life activities.  There is evidentiary support for that finding.  Rader had been ill on the job in November, 2012, and Garry Headrick, an employee of Anadarko, operator of the well associated with Rig No. 145, told Roeseler that Rader appeared drowsy and lacked energy.  Rader was taken off the rig and required to obtain a fitness-for-duty examination by a physician.  He cleared that examination and returned to work.  The doctor informed Rader that his blood test results showed an elevated white blood cell count.  Rader commented to Headrick, "with my luck, it's probably leukemia."  Headrick reported that comment to Roeseler.

On December 20, 2012, Roeseler and Hessler met with Rader to talk about his health, Roeseler saying, "We hear you have leukemia."  Rader was surprised by the comment and did not expressly deny that condition but gave assurance that he could continue to perform his job as Driller.

Rader did not have leukemia or any other condition which would qualify for a finding of actual disability under the ADA.  Accordingly, the relevant definition of disability is that in the "regarded as" prong of the statute: 412 U.S.C. § 1630.2(g)(i)(iii).

Rader asserts a violation of the ADA by a failure to accommodate him but in 29 C.R.F. § 1630.9(e) the Department of Labor has ruled that an employer is not required to provide a reasonable accommodation to an employee who meets only the regarded as definition of disability.

The plaintiff also asserts that Ensign created a hostile working environment by subjecting him to harassment because of the perception of disability.  That contention fails because all of the factual allegations of abuse by Roeseler relate to events before December, 2012.  The claim of retaliation for Rader's participation in protected activity is based on nothing more than insisting that he could perform as a Driller without the need for any accommodation.

The plaintiff has shown sufficient evidentiary support for his claim that the decision to terminate him was motivated by a belief that he had such a serious illness that he would be a liability to the company.  He did not quit his job as a Driller.  He was fired, contrary to what was said in the Personnel Action Form.

Rader testified that Hessler admitted that the injury to the workers on the second shift following Rader was not Rader's fault and the evidence shows that the failure of his crew to apply the kill-line was known to the next shift.

The plaintiff has alleged a breach of contract.

At the time of Rader's employment, Ensign had a Company Policy and Basic Directives Handbook for Employees ("the Handbook").  The Handbook sets forth a policy that "All employees are accountable for ensuring that they work in an honest and trustworthy manner and that they treat everyone with respect and dignity."  The

Handbook references and incorporates Ensign's Code of Integrity, Business Ethics and Conduct (the "Code") and requires employees to read and comply with is provisions. The Code states that Ensign "will deal honestly and fairly with its suppliers, contractors, employees and competitors."

Rader contends the Handbook and Code create an enforceable contract by which Ensign was obligated to treat him honestly and fairly. The Handbook and Code's general assurances of honesty and fairness are too vague to create an enforceable contract. *See Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994). Rader's tortious interference of an employment contract claim against Roeseler fails in tandem because there is no employment contract between Rader and Ensign.

The plaintiff has made passing reference to Colorado's statutes prohibiting disability discrimination but has not developed that claim.

Upon the foregoing, it is

ORDERED, that the defendant's motion for summary judgment of dismissal is granted as to the First and Third Claims for Relief and denied as to the Second Claim for Relief with respect to termination of employment in violation of the ADA.

Dated:   March 23, 2016

BY THE COURT:

s/Richard P. Matsch

.      _____
       Richard P. Matsch, Senior District Judge